THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SLOANNES MERCEDES MEJIA, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant | : | NO. 21-2439 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                    November 30, 2022

Sloannes Mercedes Mejia ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. §

405(g), of the Social Security Administration Commissioner's ("the Commissioner") final

decision, that denied her claim for Supplemental Security Income ("SSI") under Title XVI of the

Social Security Act.  Plaintiff filed a brief supporting her request for review, the Commissioner

responded to it, and Plaintiff filed a reply.  For the reasons set forth below, Plaintiff's Request for

Review will be denied, and Judgement entered in Defendant's favor and against Plaintiff.

## I.      PROCEDURAL HISTORY[1]

On October 1, 2018, Plaintiff applied for SSI, alleging disability, beginning March 30,

2016 as a result of her loss of vision (requiring a prosthetic eye), anxiety, depression, and asthma.

R. at 67-68, 151-59, 174, 195).  The Social Security Administration ("SSA") initially denied

Plaintiff's claim, so she requested a hearing.  *Id.* at 84-88, 91.  On December 19, 2019, Plaintiff

appeared before Administrative Law Judge ("the ALJ") Kathleen McDade for an administrative

---

[1] This court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and
Statement of Issues in Support of Request for Review ("Pl.'s Br."), Defendant's Response to Request for Review of
Plaintiff ("Def.'s Resp."), Plaintiff's Reply Brief ("Pl.'s Reply"), and the administrative record ("R.").

hearing.  *Id.* at 32-64.  Plaintiff, represented by an attorney, and vocational expert Dr. Carolyn Rutherford ("the VE") testified at the hearing.  *Id.* at 55.  On September 24, 2020, the ALJ, using the sequential evaluation process for disability,[2] issued an unfavorable decision.  *Id.* at 26.  The Appeals Council denied Plaintiff's request for review on March 25, 2021, making the ALJ's findings the final determination of the Commissioner.  *Id.* at 1-6.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Personal History

Plaintiff, born on September 25, 1987, R. at 36, was 32 years old when the ALJ rendered her decision.  She resides with her mother, stepfather, and two children.  *Id.* at 37.   Plaintiff completed eleventh grade and attended nursing school, but did not complete the nursing program. *Id.* at 39.  Although Plaintiff has a driver's license, she has not driven since March of 2018.  *Id.* at 38.  Her primary source of income is court-ordered child support and Social Security payments. *Id.* at 38.  Plaintiff has taken the following medications: Benadryl, BuSpar, Cymbalta, Doxepin,

---

[2]  The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1.  If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. § 416.920(b).

> 2.  If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. § 416.920(c).

> 3.  If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 C.F.R. § 416.920(d).

> 4.  If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 C.F.R. § 416.920(f).

> 5.  The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled.  *See* 20 C.F.R. § 416.920(g).

Nortriptyline, Prozac, and Wellbutrin.  *Id.* at 20.  Plaintiff has past work experience as a cashier helper and part-time cleaner.  *Id.* at 39-40.

B.    Plaintiff's Testimony

At the December 18, 2019 administrative hearing, Plaintiff testified regarding limitations that she alleged result from her physical impairments and prevent full-time employment.  Plaintiff testified that she only has vision in her left eye, R. at 41-42; however, she can read, with some difficulty, and watch television.  R. at 44, 46.  She is able but does not currently wear recommended corrective lenses, because she cannot currently afford them.  *Id.* at 45.  Plaintiff's anxiety and depression also affect her ability to work.  *Id.* at 46.  She receives behavioral therapy twice every other week and takes medication.  *Id.* at 47-48.

Plaintiff testified that she grocery shops independently.  *Id.* at 45.  She prepares her children for school in the mornings and sometimes picks them up from school.  *Id.* at 48-49.  Plaintiff can perform household chores, including tasks such as cooking dinner and doing laundry.  *Id.* at 49.

C.    Vocational Expert's Testimony

The VE was unable to classify any of Plaintiff's past work positions because they were not deemed relevant by the ALJ.  R. at 56.  The ALJ, however, did ask the VE to consider an individual of Plaintiff's age, education, and work experience, who was limited to a range of sedentary work.[3]
*Id.* at 56.  This individual should be limited to a position in which there is:

> Only occasional exposure to extremes of heat and cold; only occasional exposure to fumes, dust, gases, and poor ventilation; no exposure to unprotected heights or unprotected moving mechanical parts; no climbing ladders, ropes, or scaffolds . . . include no work around open flames or open bodies of water; the work . . . should be able to be performed by an individual with monocular vision so the environment should not have exposure to moving conveyor belts or

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties."  20 C.F.R. § 416.967(a).

motor vehicle equipment that may approach from the right side; the work should involve simple, routine tasks; no contact with the general public and only occasional interaction with coworkers and supervisors.

*Id.* at 56-57.  The VE responded that this individual could perform the following sedentary jobs at the unskilled level: (1) fishing reel assembly worker, 270,000 positions nationally; (2) bench work positions, 8,000 nationally; (3) sorter, 25,000 positions nationally.  *Id.* at 57.  The hypothetical presented by the ALJ was "based on wearing corrective lenses that were recommended and prescribed to improve the vision of the left eye." *Id.* at 58.

### III.   THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1. [Plaintiff] has not engaged in substantial gainful activity since October 1, 2018, the application date (20 CFR 416.971 *et seq.*).

2. [Plaintiff] has the following severe impairments: status-post eye evisceration, left eye myopia and floaters, asthma, headache, obesity, depressive disorder, and anxiety disorder (20 CFR 416.920(c)).

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except no climbing of ladders, ropes, or scaffolds.  [Plaintiff can tolerate occasional exposure to temperature extremes, pulmonary irritants (*e.g.*, fumes, dusts, gases, poor ventilation, etc.).  She cannot endure exposure to unprotected heights, unprotected moving mechanical parts, around open flames or open bodies of water.  Further, the work should be able to be performed by an individual with monocular vision, so the environment should not have exposure to moving conveyor belts or motor vehicles that may approach from the right side.  Moreover,

4

> the work should involve simple, routine tasks with occasional interaction with coworkers and supervisors; however, no contact with the public.

5. [Plaintiff] has no past relevant work (20 CFR 416.965).

6. [Plaintiff] was born on September 25, 1987 and was 31 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

7. [Plaintiff] has a limited education (20 CFR 416.964).

8. Transferability of job skills is not an issue because [Plaintiff] does not have past relevant work (20 CFR 416.968).

9. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 416.969 and 416.969(a)).

10. [Plaintiff] has not been under a disability, as defined in the Social Security Act, since October 1, 2018, the date the application was filed (20 CFR 416.920(g)).

R. at 15-25.

## IV.    DISCUSSION

A.    <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed if substantial evidence supports them.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229)).  While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance.

*Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

Overall, this test is deferential to the ALJ. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). The court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo*, might have reached a different conclusion. *Id.* Indeed, the court may not undertake a *de novo* review of the Commissioner's decision by reweighing the record evidence itself. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Monsour Med. Ctr.*, 806 F.2d at 1190-91. Nor is the court permitted to "impose [its] own factual determinations." *Chandler*, 667 F.3d at 359. *See Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder."). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.    Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that he cannot engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42

U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents returning to their past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that the impairment results in functional limitations to performing their past relevant work, then the burden of proof shifts to the Commissioner to prove that work exists in the national economy, which Plaintiff can perform given their age, education, work experience, and residual functional capacity. *See Poulos,* 474 F.3d at 92; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C.     Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ ultimately determined that Plaintiff does not have an impairment or combination of impairments that meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 26. The ALJ concluded that, based on Plaintiff's age, education, work experience, and residual functional capacity, she was capable of performing jobs in the national economy at the sedentary level. *Id.* at 25.

In her brief, Plaintiff argues remand is warranted, because the appointment of former Commissioner Andrew Saul violates the separation of powers, rendering the ALJ's decision, based on her authority derived from Mr. Saul, constitutionally defective. Pl.'s Br. at 4. Next, Plaintiff argues that the ALJ erred by improperly failing to find Plaintiff's left-hand impairment severe, and consequently overestimating her residual functional capacity. *Id.* at 6. Finally, Plaintiff argues that the limitations found by the ALJ are incompatible with the jobs the VE testified were available, and there is no evidence of available work at Step Five.

1.  <u>The ALJ's Decision is Not Constitutionally Defective and Does Not Violate the Separation of Powers</u>

Plaintiff argues that former Commissioner Saul's appointment by former President Trump violated the federal constitution, because the statute creating the position made the Commissioner's term of office longer than the Presidential term, and required the President to have cause to dismiss the Commissioner. Pl.'s Br. at 4. The Acting Commissioner agrees that the statute is unconstitutional. Def.'s Resp. at 5. However, the parties disagree about whether Plaintiff can obtain any relief based upon this admitted technical constitutional violation. This court finds that she cannot.

The Supreme Court has held that the federal constitution vests all executive power in the President. *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2191 (2020). Since it is impossible for one person to exercise all of that power solely, the Framers expected that the President would appoint and rely upon subordinate officers. *Id.* In order for the President to be accountable for the actions of the subordinate officers, the President must be able to dismiss any such officers at will. *Id.* (citation omitted). The Court has only recognized two exceptions to this rule: (1) agencies that groups of officers lead, and (2) inferior officers (not agency heads) having narrowly defined duties. *Id.* at 2192 (citations omitted).

The Commissioner, the sole head of the agency, has a six-year term of office and is removable only for neglect of duty or malfeasance in office. 42 U.S.C. § 902(a)(3). As such, § 902(a)(3) violates the federal constitution because it restricts the President's ability to remove the Commissioner. *Seila Law*, 140 S. Ct. at 2191-92. As stated previously, the Acting Commissioner concedes this point. Def.'s Resp. at 8. Nevertheless, Plaintiff cannot obtain any relief based upon this constitutional violation.

While § 902(a)(3) unconstitutionally restricted the President's authority to remove Commissioner Saul, the statute creates no defect in how Commissioner Saul was appointed. Hence, any actions Commissioner Saul took should not be regarded as void. *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021). Customarily, a defect in a removal provision does not prevent the agency head from appropriately exercising the duties of the office. *Id.* at 1788 n.24 (citing *Seila Law*, 140 S. Ct. at 2207-2211). In *Collins*, the Supreme Court gave examples of what might cause an exception to this general rule: (1) evidence that a court had prevented the President from removing an agency head, because the President did not have cause to remove the agency head; or (2) the President expressing public displeasure with the agency head and desiring removal of the agency head, but for the statute. *Id.* at 1789. Neither example applies herein. Former President Trump expressed no dissatisfaction with former Commissioner Saul, whom he appointed. Furthermore, by the time President Biden took the oath of office on January 20, 2021, and, thereafter, expressed his dislike for certain actions taken by former Commissioner Saul, Plaintiff had already received an unfavorable decision on her claim. Thus, the agency action Plaintiff complains about – the ALJ's decision – took place before any President expressed concern about former Commissioner Saul. Hence, *Collins* dictates that Plaintiff cannot obtain relief. *Id.*

2. The ALJ's Did Not Err in Her Evaluation and Finding of Plaintiff's Alleged Impairment

Plaintiff asserts the ALJ erred in evaluating her left finger impairment and her ultimate finding that it was non-severe. Pl.'s Br. at 6-12.

First, Plaintiff initially contends that the ALJ failed to find that her residuals of gunshot wounds to all four extremities were medically determinable and severe. *Id.* at 6. However, the record contradicts this contention, which states that the gunshot wound Plaintiff suffered affected her right upper arm, left index finger, and right breast; there was no effect on her lower extremities.

R. at 715, 776, 790-91, 802, 841.   Therefore, this court must reject the alleged error Plaintiff presents.

Next, Plaintiff contends that the ALJ erred in failing to find Plaintiff's residuals from the gunshot wound to her hand, severe.  Pl.'s Br. at 8.  However, the ALJ explained that Plaintiff failed to meet her burden of proving that the impairment satisfied the durational requirement.  R. at 15. Regardless, the ALJ did not commit error because she continued through the sequential evaluation process, finding that Plaintiff could only perform sedentary work.  *Id.* at 17 (citing 20 C.F.R. § 416.967).  Defendant correctly states, and this court agrees, that the step two determination is "a *de minimis* screening device" designed to quickly "dispose of groundless claims."  *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).  The ALJ here properly assigned viability to those claims he deemed were based on severe impairments; consequently, at step two any evaluative error as to those impairments he deemed non-severe was harmless.  *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (non-precedential) ("Because the ALJ found in Salles' favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.").   This court finally notes that the ALJ fully accounted for any further hand limitations, by including a restriction to sedentary work, and a job involving only occasional fingering and no feeling.  R. at 22, 25.

3.   The ALJ Did Not Err in Failing to Reconcile the VE's Testimony with Her Ultimate Decision, Because the VE's Testimony Did Not Contradict the Available Work

Plaintiff alleges that remand is required because the jobs which the VE identified cannot be performed with the limitations found by the ALJ, and that there is no other evidence of work available at Step Five.  Pl.'s Br. at 12.

Plaintiff's argument seems to rest on the incorrect assumption that the VE's testimony and the DOT conflict.  *Id.* at 12-15.  Specifically, she believes that the jobs identified by the VE

involved moving mechanical parts, something that Plaintiff is incapable of operating.  Under SSR 00-4p, when confronted with such an "apparent unresolved conflict," the ALJ would have been required to elicit a reasonable explanation of the conflict from the VE prior to relying on the VE's testimony to support a decision about whether Plaintiff is disabled.  However, one of the jobs identified by the VE, fishing reel assembler, is confirmed by the DOT as not involving any moving mechanical parts.  DOT 732.684-062, 1991 WL 679850; R. at 25.[4]

Because the ALJ identified at least one job in the national economy that exists in significant numbers, she met her Step Five burden.  *See* 20 C.F.R. 416.966(b) (stating that the Commissioner's Step Five burden of production is met if there are a significant number of jobs in the national economy "in one or more occupations" that an individual can perform); *see also Wright v. Sullivan*, 900 F2d 675, 679 (3d Cir. 1990) (finding that the Commissioner's burden is met when at least one occupation in the national economy is identified that Plaintiff can perform).  Therefore, this court must reject Plaintiff's claim that the ALJ erred in this regard.

4.  The ALJ Did Not Err by Rejecting the VE's Testimony in Response to an Alternative Hypothetical Presented by Plaintiff's Counsel Because She Was Not Required to Accept This Testimony

Plaintiff alleges that the ALJ erred by not adequately considering and accepting the VE's testimony that an inability to avoid ordinary hazards in the workplace was work preclusive as applied to her.  This court finds that the ALJ adequately considered both the evidence provided by Plaintiff supporting such a limitation, and the evidence against, and that her decision was therefore supported by substantial evidence.

At issue is Plaintiff's contention that the VE testimony, responding to Plaintiff's counsel's hypothetical, that there were no jobs available to an individual who required avoiding "ordinary

---

[4]   The other bench work and sorter positions identified by the VE involve moving mechanical parts or moving conveyor belts.  R. at 17, 25.

hazards such boxes on the floor, doors ajar, or approaching people," supports her claim that there are no jobs in the national economy available to her.  Pl.'s Br. at 15-17; R. at 60.  Plaintiff argues that her right eye blindness makes avoiding ordinary work hazards impossible.  Pl.'s Br. at 15. She cites the medical opinion of Dr. Zissie Siokos, O.D., stating that Plaintiff would not be able to avoid such ordinary workplace hazards.  *Id.*

Plaintiff applied for benefits after March 27, 2017; hence, the applicable regulations provide:

> [a] medical opinion is a statement from a medical source about what [Plaintiff] can still do despite [his] impairment(s) and whether [Plaintiff] [has] one or more impairment-related limitations or restrictions in the following abilities:
>
> > (i) [Plaintiff's] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> >
> > (ii) [Plaintiff's] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> >
> > (iii) [Plaintiff's] ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> >
> > (iv) [Plaintiff's] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2).

The ALJ here acknowledged the opinion provided by Dr. Siokos and stated why she only found it somewhat persuasive.  R. at 22.  The ALJ explained that Dr. Siokos' statement that Plaintiff was unable to avoid ordinary hazards in the workplace was unsupported by the record. *Id.*  In fact, Dr. Siokos provided no support for his opinion.  *Id.* at 486, 499.  More persuasive to

the ALJ was the medical opinion of Dr. Lawrence Schaffzin, M.D.,[5] in which he explained Plaintiff's ability to avoid normal workplace hazards.  *Id.* at 22.  The ALJ found this opinion cogent, rationally supported, and consistent with the other evidence.  *Id.* at 23, 839.  Other supporting evidence cited by the ALJ included a September 2018 report from Plaintiff's own treating doctor, Dr. Michele Markovitz, M.D., that said Plaintiff could work.[6]  *Id.* at 22.

This court finds that the ALJ provided sufficient support explaining why she did not apply the VE's responses to Plaintiff's attorney's questions, and instead looked to other evidence in the record supporting her decision.  Therefore, this court must also reject this claim that the ALJ erred.

## V.   CONCLUSION

A thorough review of the relevant law and the record indicates that substantial evidence supports the ALJ's decision, and that the ALJ's RFC captured all of Plaintiff's record-established limitations by considering the relevant evidence and reconciling conflicting evidence. Accordingly, Plaintiff's Request for Review is denied.  An implementing Order and Order of Judgment follow.

---

[5]  Plaintiff states that the ALJ should have found Dr. Shaffzin's opinion less persuasive because she was not Plaintiff's treating physician.  Pl.'s Br. at 16.  While Dr. Schaffzin did not examine Plaintiff, she was not bound to the opinion of any treating physician.  *See Chandler*, 667 F. 3d at 361.

[6]  Dr. Markovitz noted Plaintiff's ability to work, so long as she wore protective, shatterproof glasses at all times.  R. at 22, 466.